JAMES J. BALDWIN, Appellant, v. THE CITY OF BUFFALO, Respondent.

*It seems*, according to the decisions of this court, a common law *certiorari* will bring up so much of the evidence as is necessary to present the questions of law upon which the relator relies to avoid the determination of the inferior tribunal: Per MORGAN, J.

Where the complaint alleged that a hearing was had before commissioners as to the compensation to be awarded to the plaintiff on the taking of his land for a public highway by the common council of the city of Buffalo; and on such hearing it was proved by witnesses and made to appear on behalf of the plaintiff that the land in question was, and for more than thirty years had been, in his and his grantor's possession under color and claim of title, and that no highway had been passed through said land; but that said commissioners only awarded him nominal damages of one dollar, under pretense that the premises in question were included in a highway which had been dedicated to the public by the Holland Land Company, whereas *the evidence showed there was no such right of way; it seems*, the complaint does not present a proper case for a court of equity to interfere by injunction, but that the error of the commissioners can be corrected upon *certiorari:* Per MORGAN, J.

The whole question of compensation as to the plaintiff, in such a case, depends upon the existence of a right of way over the premises in question; and evidence was properly taken before the commissioners, to enable them to determine the fact as to the existence of such right of way. If the evidence was conflicting, the finding of the commissioners, after confirmation by the common council, would be final and conclusive upon all the parties: Per MORGAN, J.

To sustain the jurisdiction of a court of equity to interfere in such a case by injunction, it must appear that the invalidity of the award rests upon *extrinsic evidence*, and not upon evidence which was *properly before the commissioners, and upon which their award was made:* Per MORGAN, J.

*It seems*, however, that this court will not interfere with the exercise of such a jurisdiction by the Supreme Court, except in a very clear case.

The *locus in quo* having been reserved by the Holland Land Company for a public highway in their deeds of conveyance to the plaintiff's grantors, and there being no evidence of an adverse possession for a period of twenty years: *Held*, that the plaintiff was not entitled to compensation, although he was in possession, claiming adversely, at the time of the commencement of the proceedings by the common council to open the road in question.

Where the grantor bounded his grantee " by a road one chain wide," as laid out upon a map which included the premises in question: *Held*, that although this form of conveyance might convey the fee to the center, it conceded the right of the public to its use as a public highway.

The Holland Land Company having reserved and dedicated the premises for a public highway in their deeds of conveyance to the plaintiff's grantors, the public may accept the dedication, and open the road at any time before such dedication is revoked.

APPEAL from the judgment of the Supreme Court at General Term, reversing the judgment rendered upon the report of a referee in favor of the plaintiff, and ordering a new trial.

The action was brought to restrain the defendant from opening a road upon certain premises in possession of the plaintiff, in pursuance of the resolutions of the common council, upon the ground that the commissioners appointed by the Supreme Court to ascertain and report the just compensation to be paid to the persons owning the premises, or having an interest therein, had awarded him nominal value only, whereas the value of the premises was over $1,000. He alleged, in his complaint, that the commissioners proceeded upon the theory that the premises had been already dedicated as a public highway by the Holland Land Company; whereas, "on such hearing, it was, among other things, proved by witnesses, duly sworn for that purpose, and made to appear on behalf of said plaintiff, that the premises in question were, at said time, and for more than thirty years prior thereto had been, in the undisputed possession and occupation of said plaintiff, and those under whom he claimed.

Upon the coming in of the report the plaintiff filed his objections, but the report of the commissioners was confirmed. Upon the first trial, before the referee, he dismissed the complaint. The judgment upon his report was, however, reversed, on appeal to the Supreme Court at General Term, and a new trial granted. (29 Barb., 396.)

The referee, upon the second trial, found, as facts, that William Willink and others, commonly called the Holland Company, originally owned township eleven, range eight, in Erie county, comprising, among other lands, lots 40, 41 and 12, the westerly line of lot 12 being the easterly line of lots 40 and 41; that the premises in question were part of a road now known as the Adams road, which was laid out by the

Holland Land Company on their maps, with intent to dedicate the same to the public use, and which said road extended in a straight line from the Ellicut township, the northerly bounds of the premises in question, to the Buffalo Creek Indian Reservation, a distance of about three miles; and that, prior to the proceedings in question, the whole of said road, except the premises in question, had been opened and worked as a public highway, principally on the west line of the dividing lines of corresponding lots south of the premises in question. When the map of said township was made, the *locus in quo*, being a strip of land one chain in width, on the easterly side of lots 40 and 41, was laid down as a public highway; that, as early as 1812, a fence, dividing lot 12 from lots 40 and 41, was built on the west line of lot 12, which remained standing in the same position to the time of commencing this action; and lots 40 and 41 were cultivated up to said fence; and over a portion of the premises in question apple trees were planted at an early day. In July, 1834, the Holland Land Company conveyed lot 12 to John Ambrose, by a description which bounded it "west by a road one chain wide," and which conveyance referred to a plan in the margin thereof, showing a road one chain wide, laid off directly west of lot 12.

In July, 1813, the Holland Land Company conveyed lot 41 to Joseph Wells, making the eastern line the westerly line of lot 12, "according to a plan in the margin, *exclusive* of an acre in the southeast corner of lot 41, *reserved for a road;*" which included that portion of the premises in question.

In December, 1814, they conveyed lot 40 to Asa Chapman, bounded on the east by a road one chain wide, and referring to a plan in the margin, showing a road laid off one chain wide west of the east line of lot 12.

In 1818, Joseph Wells conveyed lot 41 to Ebenezer Baldwin; and, in 1838, Baldwin conveyed lot 41 to William B. Le Couteulx, by the same description as in the deed from the Holland Land Company to Wells.

In 1818, Asa Chapman conveyed lot 40 to Erastus Granger, bounded " east by a road one chain wide," without diagram.

In February, 1831, Granger conveyed lot 40 to Louis Le Couteulx, by the same description; and in September, 1838, Louis Le Couteulx conveyed by the same description to William B. Le Couteulx.

In September, 1852, William B. Le Couteulx conveyed parts of lots 40 and 41 to the plaintiff, James J. Baldwin, according to a diagram annexed to said deed, bounded easterly by the east lines of said lots 40 and 41, respectively; and under which deed and diagram the plaintiff entered into possession of the premises in question, claiming title thereto.

Evidence was given on the trial tending to show that the grantors of the plaintiff, although they occupied up to the east line of lots 40 and 41, always acknowledged the right of the public to open the same as a public highway. The referee found, as a fact, that the plaintiff's grantors never acquired any title to the premises in question by adverse possession; and, as matter of law, that the possession of the plaintiff's grantors was not adverse to the defendant.

No exceptions appear in the case to these findings of fact or of law. The case states that the defendant's counsel filed and served exceptions to that portion of the report of the referee wherein he finds, as matter of law, that the plaintiff should have judgment, and to each and every part of said decision.

Upon the second trial, the evidence as given upon the first trial seems to have been admitted, both that of the defendant and that of the plaintiff. The plaintiff then offered some additional evidence, showing that the owner of lot 12 had subdivided the same into lots, and sold with reference to a street four rods wide, to be taken off of the west side of lot 12. This evidence was objected to, as immaterial. The objection was overruled, and the defendant excepted.

The plaintiff having rested, the defendant then made a motion for a nonsuit, on the ground that the plaintiff had not made out a cause of action, and that he had an adequate remedy at law; also because the report of the commissioners in respect to damages was final and conclusive. The motion was denied, and the plaintiff excepted. Additional evi-

dence was given, mostly upon the question of adverse posses-
sion.

*Harmon S. Cutting* and *John Ganson*, for the appellant.

*George Wadsworth*, for the respondent.

MORGAN, J.   It is, perhaps, questionable whether the case
contains any exceptions but those arising upon the refusal
of the referee to nonsuit the plaintiff, and those arising upon
the admission of certain evidence upon the trial.   The case,
however, states that the defendant filed and served excep-
tions to the report of the referee as it appears in the judgment
roll, wherein he finds, as matter of law, that the plaintiff
should have judgment, and to each and every part of said
decision.   If this is available as an exception, it is only to be
regarded as a general exception to the final conclusion of the
referee.   As I view the case, it is of but little consequence
whether the question arises upon the refusal of the referee to
nonsuit the plaintiff, or upon the correctness of his general
conclusion, as both rest substantially upon the same facts.
All the evidence given upon the first trial, both for the
plaintiff and defendant, was before the referee when the mo-
tion was made to nonsuit the plaintiff.   I think the case
was not materially varied by the additional evidence; but if
it was, we must take the facts found by the referee as they
appear in the case, and not our own view of what was proved
when the nonsuit was asked for; for the plaintiff is entitled
to have the question decided upon the facts thus found by
the referee.   It appears that, on the former trial, the referee
dismissed the complaint, and that, upon an appeal to the
Supreme Court at General Term, his decision was reversed,
and a new trial granted.   The case on the first appeal is
reported in 29 Barb., 396, and the only question discussed in
the opinion of the court related to the form of the remedy.
Although the evidence was substantially the same then as now,
we do not know what facts were found by the referee, nor why
the decision of the referee was not affirmed upon the same
grounds upon which it was reversed upon the second appeal.

Doubtless, the same question is again presented as upon the original appeal, in relation to the form of the remedy. The decisions of the courts, in relation to the office of a common law *certiorari*, are so conflicting, that it is quite impossible to say that any settled rule has ever been established in this State which has not been subsequently departed from. It is unnecessary to cite the cases; but I will observe that, according to the decisions in this court, such a writ will bring up so much of the evidence as is necessary to present the question of law upon which the relator relies to avoid the determination of the inferior tribunal. (*People* v. *Goodwin*, 1 Seld., 568; *Albany Northern Railroad Company* v. *Brownell*, 24 N. Y., 345.)

In the case at bar, the complaint alleges that a hearing was had before the commissioner as to the compensation to be awarded, on the taking of said land, to the person or persons interested therein; and on such hearing, it was, among other things, proved by witnesses, duly sworn for that purpose, and made to appear on behalf of the plaintiff, that the land in question was, at said time, and for more than thirty years prior thereto had been, in the possession and occupation of the plaintiff, and those under whom he claimed, under color and claim of title thereto; and no road or street had passed through said land, or any part thereof; that the said commissioners awarded to the plaintiff nominal damages of one dollar, upon the ground that the premises in question were included in a street, which had been dedicated to the use of the public by the Holland Land Company; but that no such street was ever dedicated or recognized by the proper authorities; that the plaintiff filed objections to the report, specifying the same; and that, notwithstanding the said objections, the common council confirmed the report. From this, it appears that the question was litigated before the commissioners and before the common council.

The complaint then avers that all the proceedings of the defendants, subsequent to the report of the commissioners, are illegal and void, as the said commissioners have not, *in fact*, awarded any compensation to the plaintiff for taking said land.

It will not be denied that the whole question of compensation to the plaintiff depends upon the existence of a right of way over the premises in question; nor will it be denied that evidence was properly taken before the commissioners to enable them to determine the fact as to the existence of a right of way. The plaintiff says the evidence showed there was no such right of way, and, therefore, the defendants, contrary to the provisions of the Constitution, are about to take his lands for a highway, without making him any compensation therefor.

Two questions suggest themselves, in view of the above statements: one is, whether, upon a common law *certiorari,* the evidence taken before the commissioners to prove the existence of this alleged right of way could be properly returned; and if not, secondly, whether the finding of the commissioners upon a question of fact, properly before them for their determination, is not final and conclusive upon all the parties, after its confirmation by the common council. By section 13 of the act of 1855, amending the charter of the city of Buffalo, it is declared that the report of the commissioners, when confirmed by the common council, " shall be final and conclusive on all parties interested."

With great respect, I submit, that, if it did not appear before the commissioners, by the evidence then taken, that a right of way existed over the plaintiff's land, the error of the commissioners could be corrected upon *certiorari.* If the evidence was conflicting, and in the absence of fraud, I know of no remedy which the plaintiff has to overrule their determination. Under the provisions of the charter, the determination of the commissioners upon the merits must be regarded as final, after the confirmation by the common council.

Doubtless the commissioners were wrong in awarding anything to the plaintiff by way of compensation, if the land in question was already burdened with a right of way. Their award, upon the face of it, would show that the plaintiff had been compensated for the lands in question. It was upon this ground that the Supreme Court maintained its equitable

jurisdiction to interfere and remove what is called a cloud upon the plaintiff's title.

I doubt whether the case comes within the principle relied upon to sustain the action. The cloud, so called, was the award of the commissioners, which was apparently regular upon its face, though perhaps no more regular than it would have been if it had denied the plaintiff any compensation whatever, on the ground of a dedication of the premises for a public highway. Now, to sustain the jurisdiction of a court of equity to remove it out of the way, it must appear that the invalidity of the award rests upon proof *aliunde*. When we come to this proof, we find that it was part of the evidence before the commissioners, and upon which they made the award which is charged to be a cloud upon the plaintiff's title. Thus, we find the same question litigated before the Supreme Court, in a new suit, which was litigated before the commissioners, and depending upon the same proofs for its determination. If the principle alluded to is applicable to such a case, it would not be difficult to sustain the equitable jurisdiction of the Supreme Court to entertain an action for the purpose of removing a judgment rendered in another court. Such a judgment is a cloud upon the title of the defendant therein, in precisely the same sense as the award of the commissioners is a cloud upon the title of the plaintiff. The error of the Supreme Court, upon the first appeal (if it was error), consists in the assumption, contrary to the allegations of the complaint, that the evidence to show the invalidity of the award, was not the evidence upon which it was made. *Extrinsic evidence*, within the meaning of the rule, is evidence not legitimately before the tribunal in which the determination is made. While I am of opinion that the remedy of the plaintiff, if he is entitled to relief, might and should have been sought by a *certiorari*, and that this action should have been dismissed upon that ground, still it would not become this court to interfere, upon appeal, with the exercise of such a jurisdiction by the Supreme Court, except in a very clear case.

But, in my opinion, the facts found by the referee show,

very clearly, a right of way over the premises in question. It is found in terms that the plaintiff's grantors never acquired any title to the premises in question by adverse possession, and, as matter of law, that their possession was not adverse to the said defendant. The character of the plaintiff's title is not stated, except by way of inference. Certain facts are stated in the report which impliedly show that his possession had not ripened into a title, although adverse at the time of the commencement of the proceedings taken by the common council to open the road across the premises in question. The *locus in quo* was not conveyed to his grantors, but was reserved and excepted for a public highway, so far as lot 41 is in question. As to lot 40, his grantors were bounded upon the supposed highway, that is, "by a road one chain wide," laid out upon a map which included the premises in question. While this form of conveyance might have carried the fee to the center, it conceded the right of the public to its use as a public highway. It was, in effect, a reservation of the land for a public way, and a renewal and confirmation of the original dedication.

Now, this dedication was by the Holland Land Company, who were the original owners of both lots 40 and 41, and lot 12, adjoining them on the east. They conveyed lot 41, excluding four rods on the east for a public highway. The title in this portion of the premises, therefore, remained in the Holland Land Company, and their grantees could acquire no title except by subsequent adverse possession.

The referee finds that the plaintiff took a conveyance from William B. Le Couteulx of parts of lots 40 and 41, covering the premises in question, in September, 1852, under which he entered into possession claiming title. His adverse possession, therefore, commenced less than twenty years before the proceedings taken by the defendant to open the road. There is no proof to authorize the referee to find that his grantors claimed title; and, on the contrary, the proof shows, and the referee finds, as a *matter of law*, that the possession of the plaintiff's grantors was not adverse to the defendant. Doubtless, the referee should have put this among his findings

of fact; but, in the absence of any specific finding of fact to the contrary, I think we should not assume that the plaintiff had acquired a title by adverse possession. Such a title is not to be presumed, without proof, in any case, against the existence of the outstanding legal title; and, to be available as a defense, must be satisfactorily established.

As has been already stated, the dedication of these lands for a public highway was made by the original owners, and they have never recalled it: what claim, then, has the plaintiff to revoke it? None whatever. He never purchased the right of the Holland Land Company to revoke the gift, and never acquired any title as against the public to the land in question, except, perhaps, the fee to the center of the proposed road where it crosses lot 40; but he took the fee of that *subject to the easement;* and I am unable to discover any principle of law or equity by which he can be allowed to acquire any more interest therein than he purchased, short of twenty years' adverse possession. Neither of the plaintiff's grantors purchased the four rods of land dedicated by the Holland Land Company to the use of the public as a highway. The plaintiff may, perhaps, claim that he purchased these four rods of Le Couteulx in 1852; but Le Couteulx was not the owner, and had no title to convey. The right to revoke the dedication still rests in the original owners; and until they exercise such a right, the public may doubtless accept the dedication and open the road, without interference from other parties. But it is unnecessary to discuss the question further, as it is satisfactorily disposed of in the prevailing opinion delivered in the Supreme Court upon the second appeal, in which I fully concur. As the defendant has prevailed upon the principal question, it is unnecessary to discuss any of the other exceptions.

The result is, that the order of the Supreme Court must be affirmed, and, under the stipulation of the plaintiff, instead of a new trial, judgment absolute must be entered for the defendant, dismissing the plaintiff's complaint, with costs, both in this and the Supreme Court.

Judgment accordingly.