## The Minnesota Central Railway Company

### *vs.*

### Francis J. McNamara.

Upon the return to a writ of certiorari, directed to an inferior tribunal not acting according to the course of the common law, the record, the proceedings in the nature of a record, the rulings of such inferior tribunal upon the admission or rejection of testimony, the instructions given and refused to the jury, with the exceptions taken, together with so much of

the evidence as may be proper to show the bearing of such rulings and instructions, and prejudice to the petitioner, may be brought before the Supreme Court for examination and revision.

The rules laid down in *Winona and St. Peter R. R. Co.*, 11 *Minn.*, 538, as to the deduction of benefits in assessing the compensation to be paid for the appropriation of lands for railroad purposes, followed and applied.

The hearing in this case was upon an application of the Minnesota Central Railway Company, upon their petition and other papers, for a writ of certiorari. The case is fully stated in the opinion of the Court.

G. E. COLE for Petitioner.

W. A. GORMAN for Respondent.

*By the Court*—BERRY, J.—The petitioner took lands of the respondent for right of way, and for depot and elevator grounds. Commissioners appointed under the laws from which the company derives its power made an award and report of the compensation which should be paid for such taking, from which report and award the respondent appealed to the District Court for the county of Steele. The appeal was tried by a jury, but the verdict was set aside, and a new trial granted by the Court below. A new trial was had (also by a jury), a verdict rendered for the respondent for $1398.50, and judgment entered thereupon. The petitioner, having unsuccessfully moved for a second new trial below, now comes to this Court, and upon notice to the respondent's attorney applies for a writ of certiorari.

The application is based upon a verified petition, containing a brief history of the proceedings below, a document in the

vol. xiii—34.

nature of a bill of exceptions, a copy of the verdict, of the order refusing a new trial, and of the judgment; and the prayer of the petition is "that a writ of certiorari may issue to the said District Court of the fifth Judicial District, in and for the County of Steele, commanding said Court that the record of said proceedings, and judgment, and the evidence herein before, and in said bill of exceptions stated at large upon the point of the special benefits derived by the respondent's land by reason of the location of petitioner's road, depot and elevator thereon, and the rulings of the Court upon the rejection of testimony thereon, and the charges and refusal to charge the jury upon said subject of special benefits, and the petitioner's exceptions thereto, be certified to this Court. That said judgment, order, verdict, and proceeding be quashed, set aside and reversed, in that the said District Court committed an irregularity in disregarding the directions of said statute, as to the deduction of special benefits, and transcended the power vested in the said Court in and by said statute, and for errors at law occurring at the trial and excepted to by the petitioner, and for uncertainty and invalidity of the verdict."

. The petitioner having no right of *appeal* to this Court in a case like that at bar, (see *McNamara vs. M. C. R. Co.*, 12 *Minn.*, 388,) must obtain a remedy for the errors assigned, through the writ of certiorari, if at all. The first question which we have to examine is: Will the writ of certiorari bring up for review the errors or irregularities complained of? If it will not, then this application must be dismissed. It has been said that the writ of certiorari brings up nothing but the record, or the proceedings in the nature of a record, and that therefore the Court to which the return is made can only review errors apparent upon such record or proceedings, and cannot examine the rulings of the inferior tribunal upon the admission or exclusion of evidence, or the giving or refusal

of instruction to a jury. The respondent's counsel adopts this view of the scope of the writ of certiorari, and relies mainly upon the decisions of the Courts of New York. As to these it is perhaps sufficient to quote the following language of Mr. Justice Morgan, in a case later than any cited by the counsel—*Baldwin vs. City of Buffalo*, 35 *N. Y.*, 380: "The decisions of the Courts in relation to the office of a common law certiorari are so conflicting, that it is quite impossible to say that any settled rule has ever been established in this State, which has not been subsequently departed from. It is unnecessary to cite the cases, but I will observe that according to the decisions in this Court, such a writ will bring up so much of the evidence as is necessary to present the question of law upon which the relator relies, to avoid the determination of the inferior tribunals." See also *Mullins vs. The People*, 24 *N. Y.*, 399; 25 *N. Y.*, 315. In the still later case of *Swift vs. City of Poughkeepsie*, 37 *N. Y.*, 516, it is said: "The plaintiff denies the efficacy of this remedy upon the ground that upon a certiorari the Court will only consider the question of jurisdiction, and that in this case, if the Court found as it would upon the doctrine now proclaimed, that the assessors had jurisdiction, their determination as to the legality of the tax could not have been reviewed. It is true that this has been the doctrine of the Courts to a considerable extent, upon what ground either of principle or necessity I never could very clearly comprehend. But I think at this time a more liberal rule would and should be applied, and that a certiorari would not only bring up the naked question of jurisdiction, but the evidence on which the body acted to which the writ is directed, as well as the ground or principle of their action, and thus present the entire case for review, and if necessary for correction." In *Inhabitants of Mendon vs. Co. Com's of Worcester*, 2 *Allen*, 464, C. J.

Bigelow says: "It appears by the petition that the error, to correct which it is claimed that a writ of certiorari ought to issue, was not in any manner apparent on the record,    *    *    but in an erroneous ruling by them in matter of law relating to the burden of proof.    *    *    It is true that the remedy of certiorari in our practice has been chiefly confined to cases where some error or defect in proceedings in their nature judicial, which are not according to the course of the common law, appears on the record.   But we are of opinion that the remedy is not necessarily confined to that class of cases. Indeed if it were, parties would be wholly without any remedy in all cases where the law gives them no right of appeal, or of exceptions, or any other mode of presenting questions of law for revision by a higher tribunal, arising on proceedings which do not appear on the record.    *    *    It would be a serious defect in the administration of justice if no means were provided by which parties aggrieved could bring up before this Court any matter of law, except such formal errors and defects as may be shown on the face of the proceedings.   But no such defect exists in our jurisprudence. By *Gen. Sts., Chap.* 112, *sec.* 3, a general superintendence is given to this Court of all Courts of inferior jurisdiction, to correct and prevent errors and abuses therein when no other remedy is expressly provided, and for this purpose to issue writs of error, *certiorari, mandamus,* &c., necessary to the furtherance of justice.   This broad and general authority was doubtless conferred for the purpose of enabling this Court to bring before them any proceedings of judicial tribunals where there was no special mode prescribed for reviewing and correcting them." Our statute declares that "the Supreme Court has power to issue writs of error, certiorari, mandamus, prohibition and all other writs and processes not especially provided for by law, to all Courts of inferior jurisdiction, to

corporations and to individuals, that are necessary for the furtherance of justice and the execution of the laws," and further that "said Court is vested with full power and authority necessary  *  *  for the exercise of its jurisdiction as the supreme judicial tribunal of the State." *Gen. Stats., Chap.* 68, *secs.* 1 *and* 2. So far as the question under examination is concerned, we are of opinion that the language of our statute is substantially equivalent to that of the statute of Massachusetts above referred to, and that it should receive a like construction.

If there should be any doubt whether at common law the writ of certiorari would bring up anything except the record, we are of opinion that the statute gives us as "the supreme judicial tribunal" of the State the power to issue it with an enlarged office, if not as a common law certiorari, strictly speaking, yet as some "other writ  *  *  necessary to the furtherance of justice and the execution of the laws" in the nature of a certiorari, and to all intents and purposes a certiorari, with increased scope. We do not deem it necessary to make any further citation of authorities upon this subject. Very many of them are collected in 1 *Tidd's Practice,* 3d *Am. Ed.,* 398, *note.* It is only necessary to say in this case that the record, the proceedings in the nature of a record, the rulings of the inferior tribunal upon the admission or rejection of testimony, the instructions given and refused to the jury, with the exceptions taken, together with so much of the evidence as may be proper to show the bearing of such rulings and instructions, and the prejudice to the petitioner, may be brought before this Court in the return to a certiorari for examination and revision. We are brought now to the consideration of the merits of this case. The law under which the proceedings to which this application relates were taken is to be found in *Ch.* 2, *Laws* 1864. By *Sec.* 20

of that act it is provided, in substance, that three commissioners shall estimate the damages sustained by the appropriation of lands for the purposes of the railroad company, "deducting from such damages the special benefits and advantages which such lands have received or will receive by reason of the location or construction of said railroad and works." And in case of appeal the same rules are to govern the jury in determining the amount of compensation to be paid to the land owner.

Upon the trial below the respondent (who is the petitioner here) asked a witness if there was a cemetery adjoining the land in controversy prior to the location of the railroad, and the removal of which was compelled by the railroad, and to what extent the appellant's land was benefited from this cause, if any.

The appellant below objecting to the question, the objection was sustained, and exception taken. The respondent below requested the Court to charge the jury : " That in deducting special benefits from the damages, they are not to take into consideration the general advantages derived from the road by the appellant's addition in common with the community in general, but limiting the benefits to the land adjacent to, and connected as one tract or parcel with that taken by the road ; if they find that the location of the road, depot and elevator on that tract, has occasioned a rise in the value of the remaining portion, by enhancing its value for building purposes, it is the duty of the jury to make a deduction of such special benefits from the damages." The Court refused, and the respondent below excepted.

The respondent below further requested the Court to charge the jury : "That if the appellant's land has derived a benefit from the location of the railroad depot and elevator upon that tract, by having a value created and enhanced for

building lots, and if it was before only valuable for agricultural purposes, they may deduct such amount from the damages, if the land in general, in the vicinity, does not derive the same, although one or two other land owners may have been benefited in the same way." The Court refusing, the respondent below excepted. We will consider all these exceptions together.

In *Winona and St. Peter R. R. Co. vs. Waldron*, 11 *Minn.*, 538, the subject of the deduction of benefits in cases of this kind was considered by this Court and we held that "the benefits to be deducted must be those resulting directly to the land, a part of which is taken, from the construction of the road, not through the vicinity but through the land." It is worthy of remark that this holding was made in reference to the charter of the Winona and St. Peter R. R. Co., which provides for the deduction of "the benefits to accrue" to the land claimant, while the petitioner's charter provides for the deduction of "*special* benefits and advantages" only.

It does not appear on what ground objection was made to the question in relation to the removal of the cemetery, but without reference to other grounds it was properly excluded under the decision in *Winona and St. Peter R. R. Co. vs. Waldron*.

The benefits are to be confined to those *resulting directly* from the construction of the road *through the land of the party whose land is taken*. It might be possible that the direct result of locating the road *through the cemetery*, would be to compel its removal, but it is not easy to see how such removal could result directly from the location of the road upon another tract of land. We further held in the case above cited that any general benefit, arising from the construction or operation of a railroad, shared by the land claimant in common with the whole country in the vicinity, and not peculiar

to them, or to other lands actually crossed by the road, are not to be considered in ascertaining the compensation to be paid.

The instructions above copied were therefore properly refused, because they did not confine the supposed benefits to the land of the respondent and other lands actually crossed by the road. And that the benefits which can be deducted should be confined in this way, we understand to be the rule laid down in the case cited by the petitioner. *Whitman vs. Boston & W. R. R.*, 7 *Allen*, 314. See also same case 3 *Allen*, 133.

The Court charged (the petitioner excepting) "that if the land has received special benefits which none of the land in the vicinity has received, the jury must allow" the same. It is not objected to this charge that it was improper for the jury to deduct special benefits, which none of the land in the vicinity had received, but that they should have been instructed to deduct more. In other words it is objected that the charge did not go far enough. If the petitioner's counsel was of opinion that other benefits than those spoken of should be allowed, it was for him to ask for further instructions. This does not appear to have been done, except by the requests which as we have already determined were rightly refused, and he has therefore no ground of complaint

It is urged finally on behalf of the petitioner, that the verdict of the jury and the judgment based upon it are void for uncertainty, in that they describe many of the parcels appropriated by the company as parts of certain named lots without designating what parts. The proceedings in the Court below were upon appeal from the report and award of commissioners. The report of the commissioners, it is to be presumed, designated in some way, and with sufficient certainty the lots and parts of lots taken for the purposes of the

company.   This report, as appears by the petition, was filed in the office of the clerk of the Court where the appeal was tried, and was the basis of the appeal and part of the record. It was in regard to the same lots and parts of lots designated in the report, that the trial below was had, and the verdict of the jury rendered; and in the verdict the jury "assess the damages   *   *   on the several pieces and parcels of land *taken* by the defendant for railway purposes as lot No. eight, (8) block No. one, (1) $70.00.   *   *   Part of lot one, (1) in block one, (1) $36.00," &c., &c.   Under this state of facts we think there is no reasonable doubt as to the meaning of the verdict.   The same course of remark is applicable we think to the judgment.   At any rate, if the judgment is indefinite an application should be made below for its correction.   Certainly, without such application, we should not feel called upon, in the exercise of our discretion, to issue the writ of certiorari for the purpose of setting aside the judgment, or making the desired correction here.

Petition dismissed with costs to the respondent.