*Conveyance of land subject to a street shown on a map — what act shows an acceptance of the street by the public authorities — when an adverse possession does not arise from the act of obstructing a street.*

Upon an appeal from an order confirming the report of the commissioners in proceedings to condemn land for a public street, it appeared from the papers presented upon the record that the claimant, Mr. Haskins, acquired his title to the property in question in October, 1850, through a deed made by one Arthur G. Powell, individually, and as administrator and trustee of the estate of William Powell, deceased. The premises conveyed were part of the farm of the said William Powell who, in October, 1849, filed a map of his farm in the office of the clerk of Westchester county, upon which appeared the lines of a proposed avenue called College avenue. The deed conveyed the said premises, described as lots 2 and 3 on said map, "together with such parts of the said College avenue as are opposite and contiguous to the said premises hereby conveyed, and together with the one-half of such parts of the said other streets, avenues and roads laid down on said map as are opposite and contiguous to and fronting on the premises hereby intended to be conveyed, respectively, and together with the right of way, by, through and upon said roads, streets and avenues, laid down on the said map, in common with the other part owners of said premises, * * * it being intended to keep open the said streets and avenues as public roads."

Shortly after taking possession under his deed, Mr. Haskins opened College avenue, the easterly line corresponding with the easterly line of that avenue as laid out on the map, but he opened it to a width of fifty feet instead of sixty-six feet, the width as defined by the map. On laying out the avenue Mr. Haskins, who owned the land on the westerly side of the avenue, put up a building partly on the strip of sixteen feet wide, which was included in the lines of College avenue as laid down on said map, which had been occupied by himself and his tenants up to the time of the trial, taxes being paid thereon to the town of West Farms, while it was part of Westchester county and to the city of New York since that time. The commissioners awarded nominal damages only for the strip.

On an appeal from the order confirming their report, it was urged that the commissioners were bound to make a substantial award for the strip in question, because, although it was laid out on the map as a part of the public street called College avenue, yet as it had never been accepted as such, the fact of its having been so designated on the map was not to be considered by the commissioners in making their award.

In 1877 the park commissioners filed a map, on which College avenue was designated as a public street throughout its whole width, as laid out upon the Powell map.

*Held*, that the filing of this map by the park commissioners was an acceptance upon the part of the public of the dedication attempted to be made by Powell, unless there had been a revocation of such dedication by some person authorized to make the same prior to such acceptance.

It was claimed that the occupation of a portion of this avenue by Haskins was a revocation of such dedication.

*Held*, that none but the dedicator, or his legal representatives, could revoke it; that as Haskins acquired his title, subject to the easement created as to the avenue, that the occupation of the *locus in quo* by him did not extinguish, destroy or impair the easement, because his possession was under the limitations contained in his deed, and was, therefore, not adverse, and, consequently, not susceptible of ripening into an exclusive right.

It was also claimed that Haskins had been in adverse possession of the property in question since the construction of the buildings above mentioned.

*Held*, that the erection of the building on the part of Haskins was simply an encroachment upon the easement, and was not sufficient to constitute an adverse possession, or to charge the owner of the easement with any knowledge of any adverse claim on the part of Mr. Haskins, since the right of passage was conceded by leaving the avenue open to the extent indicated. (Barrett, J., dissenting.)

*Bridges* v. *Wyckoff* (67 N. Y., 130) followed.

Appeal from an order or judgment of the Special Term of the New York Supreme Court, held in the county of New York, made on the 9th day of November, 1888, in so far as it overruled the objections of John B. Haskins to the report of commissioners in proceedings to condemn land for a public street, making an award of a nominal sum only for a parcel of land designated as No. 91, and making no award for the buildings erected thereon.

*Abel Crook*, for John B. Haskins, appellant.

*Carroll Berry*, for the Mayor, etc., respondent.

Van Brunt, P. J.:

It appears from the papers presented upon this record that Mr. Haskins acquired his title to the property in question in October, 1850, through a deed made by one Arthur G. Powell, individually and as administrator and trustee of the estate of William Powell, deceased. The premises conveyed were a part of the William Powell or Union Hill farm. In October, 1849, a map

of this farm was filed in the office of the clerk of Westchester county, upon which distinctly appeared the lines of what was to be a proposed avenue called therein College avenue. These lines were somewhat altered by a subsequent map made in 1850, and filed in 1851. By the description contained in said deed the premises conveyed to Mr. Haskins were referred to as being lots 2 and 3 on said map and containing two and twenty-seven one hundredths acres of land. The deed conveyed said premises, " together with such parts of said College avenue as are opposite and contiguous to the said premises hereby conveyed, and together with the one-half of such parts of the said other streets, avenues and roads laid down on said maps as are opposite and contiguous to and fronting on the premises hereby intended to be conveyed respectively, together with the right of way by, through and upon said roads, streets and avenues, laid down on the said map in common with the other part owners of said premises, * * * it being intended to keep open the said streets and avenues as public roads." Shortly after taking possession under his deed, Mr. Haskins proceeded to open College avenue, the easterly line of which corresponded with the easterly line of that avenue, as laid out on the farm map, but he opened it fifty feet instead of sixty-six feet wide as shown on the map. On laying out the avenue Mr. Haskins, who owned the land on the westerly side of the avenue, put up a building partly on the strip sixteen feet wide which was, as above stated, included in the lines of College avenue, as shown on the farm map, and it has been occupied, by himself and his tenants in possession of the strip, ever since the paying taxes thereon to the town of West Farms while it was part of Westchester county, and to the city of New York since that time.

The commissioners having awarded him nominal damages only for the strip of land and house, Mr. Haskins objected to the confirmation of their report, and from the order confirming such report this appeal is taken.

On behalf of the appellant it is urged that the commissioners were bound to make a substantial award for the strip in question, because, although it was laid out on the map as a part of the public street called College avenue, yet, it never having been accepted as such, it was not to be so considered by the commissioners in making their award; and, also, because Mr. Haskins has been in adverse

possession of the property since the construction of the building as aforesaid.

Various authorities have been cited to show, first, that there should be an acceptance of the dedication in order that the owner of the fee should be entitled only to a nominal award; and, secondly, that Mr. Haskins being since 1852 in possession of the property, and paying taxes thereon, has established a claim thereto by adverse possession.

It seems to be clear that the filing of the map by the park commissioners in 1877, making College avenue a public street throughout its whole width as laid out upon the Powell map above referred to, was an acceptance upon the part of the public of the dedication attempted to be made by Powell, unless there had been a revocation of such dedication by some person authorized to make the same prior to such acceptance. It is claimed that by the occupation of a portion of this avenue by Haskins there was a revocation of such dedication, but the difficulty with the position of the appellant is that he had no power whatever to revoke such dedication. By the deed from Powell to Haskins the avenue to the full width was dedicated to the public. Haskins took his title subject to such dedication, and, having acquired his title subject to this easement, none but the dedicator or his legal representatives could revoke it. Mr. Haskins could not revoke it, because, as already said, he took his title subject to the dedication; and, having taken his title in that manner, it was impossible for him to revoke that over which he had no control. If Mr. Haskins had made this dedication or had taken his title irrespective of it, then, perhaps, he might have had the power of revocation; but having taken subject to this easement, it is difficult to see how he could revoke a license which had been granted by his grantor, and upon the maintenance of which his grantor had a right to insist, and which right the grantee could not take away from him.

Neither did the occupation of the *locus in quo* by Mr. Haskins, upon the ground that it was adverse, extinguish, destroy or impair the easement, because his possession was under the limitations contained in his deed, and was not susceptible of ripening into an exclusive right. The erection on the part of Haskins was simply an encroachment upon the easement, and was not sufficient to con-

stitute an adverse possession, or to charge the owner of the easement, with any knowledge of an adverse claim on the part of Mr. Has-kins, since the right of passage was conceded by leaving the avenue open to the extent indicated, and unless something appears more than appears in the papers now before the court, his occupation must be deemed to have been subject to the limitations expressed in his deed.

In the case of *Bridges* v. *Wyckoff* (67 N. Y., 130), the plaintiff claimed title to a strip of land eighteen feet in width and forming part of the street referred to in the conveyance, through which she took title and which had been inclosed by her or her grantor for more than twenty years. The words in the conveyance under which the title was acquired were as follows: " All the right, title and interest of the parties of the first part, in and to the one-half of such streets as lie immediately in front of all the lots hereby conveyed, the same to be used however as public streets or roads forever." The plaintiff was defeated on the ground that the deed showed the existence of the street. The court say " the deed showed that at that time there was no claim of right as against the dedication or the right of the public to take and use the land as a street," and, further, that " all that was needed, therefore, to make the land dedicated a public street, was the acceptance of the land dedicated by the proper public authorities as a street; and it is undis-puted that there was such acceptance by the highway commissioners of the town in 1871."

In the case at bar there was such acceptance by the filing of the map by the park commissioners in 1877. In the case cited the court say : " There had been no revocation of the dedication at any time. *The original proprietors*, and all the other parties interested might have united and revoked the dedication before acceptance by the public authorities, but this they did not do;" recognizing, therefore, the principle that the grantor or his legal representative was a necessary party to the revocation of this dedication. In the case cited it was claimed that the plaintiff could hold the land fenced in by adverse possession. The court say : " The difficulty with this claim is that the land was not adversely claimed or pos-sessed," because in the deed by which she acquired her title the street and the right of the public to use it was expressly recognized.

Our attention has been called to no principle which recognizes a possession adverse to an easement by establishing possession, claiming title under a deed which expressly establishes the easement. There must be something more than mere possession to establish adverse possession. It must be possession under claim of title, and where such claim of title is founded upon a written instrument, no greater title can be acquired than was given by the instrument itself.

We are of opinion, therefore, that there was a complete accepted dedication of the premises in question, and that, under the principles governing the making of awards in cases of this description, no error was committed by the commissioners, and the order should be affirmed, with ten dollars costs and disbursements.

DANIELS, J., concurred.

BARRETT, J. (dissenting):

I am unable to concur in the conclusions arrived at by my brethren in this case. In my judgment, Mr. Haskin was entitled to a substantial award. He acquired an absolute title to the sixteen feet in question, subject only to a right of way in the adjoining owners, and to a possible acceptance by the public authorities (of West chester county) of the proferred dedication. There is no question here of adverse possession, *but of a use of the easement, adverse to the enjoyment of the adjoining owners.*

The easement, having been acquired by deed, could only be destroyed by adverse use for the space of time requisite to create a prescriptive right. A mere obstruction of a way, caused by the owner of the servient estate, for less than twenty years, would not bar the right. And the adverse use for even twenty years must be open and notorious in hostility to and indicating a denial of the right granted. (Wash. on Easements [ed. 1863], 551, § 6, sub. 2, and cases there cited.)

Thus, in *Yeakle* v. *Nace* (2 Whart., 123), where eleven lots lying side by side were sold to two persons, ten to one and one to the other, with a right of way across the rear end of each lot, it was held that the owner of the ten lots lost his right of way by acquiescing for twenty-one years in the inclosure and cultivation by his neighbor of the remaining outside lot. The court, in its opinion,

gave the following illustration : " If a man grants twenty-five feet of front on one of the streets of this city, retaining the title to the adjoining land, and at the same time grants the right to an alley four feet wide, between the lot sold and ·that retained, expressly reserving the right to build under and over the said alley ; now the grantor is not bound to build at all, and though he does not for more than twenty-one years, his right to build under and over the alley is not gone ; but if his vendee of the twenty-five feet should cover those four feet by his building, *the whole right of the vendor to·those four feet would be gone by the limitation of twenty-one years, unless suit was brought within that time.*"

, Even in the case of tenants in common, adverse possession, such as will effect the ouster of a co-tenant, may be acquired by unequivocal acts open and public, making the possession so visible, hostile, exclusive and notorious, that notice may be fairly presumed. (*Culver* v. *Rhodes*, 87 N. Y., 348 ; *Millard* v. *McMullin*, 68 id., 345 ; *Humber* v. *Trinity Church*, 24 Wend., 587.)

In the case at bar there was, as to these sixteen feet, an open and notorious denial by Mr. Haskin of the right of way granted to the adjoining owners. The latter were entitled, according to the present contention, to the enjoyment of a street sixty-six feet in width. He asserted that they were entitled to a street of but fifty feet in width. He opened and has since maintained a street of that width at his own expense, and they acquiesced in the limitation. He took exclusive possession of the remaining sixteen feet, fenced the space in, built upon it, rented it, paid taxes upon it, and in every conceivable way closed it to the street use. All this was before the eyes of the adjoining owners, and for upwards of twenty years they neither dissented nor demurred.

It is entirely plain that their rights, with respect to the subject of this adverse use, were, upon well-settled principles, abandoned and lost. As to the public, they acquired no vested rights during the twenty years of Mr. Haskin's hostile and adverse use. The offer of dedication remained open to them, but they did not accept it until Mr. Haskin's fee had been freed from the easement. They could have stopped the running of this adverse use at any time within the twenty years by an acceptance of the dedication. So could the

adjoining owners by acts indicative of non-acquiescence or dissent. But the public could not, any more than the adjoining owners, lie by while Mr. Haskin *was acting upon* his denial of the easement, and then when the adverse use had destroyed the rights conferred by the deed or proffered by the map, come forward, and, by their tardy acceptance, revitalize the dedication.

The public is not bound to accept a proffered dedication. Such acceptance involves duties and responsibilities which the authorities may be unwilling to assume. During these twenty odd years, the authorities of Westchester county declined to accept any duties or responsibilities with regard to the proposed streets in question, nay, more, they observed in silence the assumption of those duties and responsibilities by Mr. Haskin, and they recognized his acts in hostility to the unaccepted dedication by taxing him annually for the structure erected upon these very sixteen feet.

The adjoining owners had at least vested rights during the period of adverse use. The public had nothing but an inchoate right. Both were lost by the hostile and adverse use thus acquiesced in for over twenty years.

The cases fully support this conclusion. In *Baldwin* v. *City of Buffalo* (29 Barb., 396) it was held that where the owner of land dedicates the same to the public for a street, and then grants the land in fee, and the grantee and those holding under him possess and occupy the land for more than twenty-five years before the public asserts any claim or right founded upon the dedication, *all right in the public* will be deemed to have ceased. On a subsequent appeal in the same case (35 N. Y., 375) it was stated that the plaintiff took the fee *subject to the easement;* and that the court was unable to discover any principle of law or equity by which the plaintiffs could be allowed to acquire any more interest therein than he purchased, *short of twenty years adverse possession.*

In *Alves* v. *Town of Henderson* (16 B. Monroe, 131) it was held that where an individual inclosed part of the land dedicated to public use and held exclusive possession of it for twenty years, he gained a valid prescriptive title. So, in *Rowan's Executors* v. *The Town of Portland* (8 B. Monroe, 232), Ch. J. MARSHALL said that the right of the public in property dedicated to public use may be lost by an

adverse possession for twenty years. (See, also, *Peckham* v. *Henderson*, 27 Barb., 207 ; *Webber* v. *Chapman*, 42 N. H., 326.) Of course, this doctrine does not apply to an *established* highway where there is no non-user, and where the occupation is a mere obstruction and nuisance. (*Driggs* v. *Phillips*, 103 N. Y., 82.)

*Bridges* v. *Wyckoff* (67 N. Y., 130), does not conflict with these cases, and, when carefully examined, it will be found to be in entire harmony with the principles above stated. In that case there had been repeated mesne conveyances of the land in dispute ; in each of these mesne conveyances the mutual easement in the land had been set out in full and the transfer made expressly subject thereto. By the acceptance of the respective deeds the several grantees had distinctly reaffirmed and recognized the easement. This recognition was plainly fatal to any claim of possession, adverse and hostile to the easement; and as the last of the mesne conveyances (the plaintiff's) was very much within the statutory limit of twenty years, no title by adverse possession, or exclusive right by adverse use, could have been acquired thereunder. This is apparent from the language of EARL, J.: " The difficulty with this claim," that of adverse possession, " is that the land *was not adversely claimed or possessed. She took her deed in* 1862," the order declaring the street to be a public highway having been made in 1871, " *and in that* the street and the right of the public to use it as such was expressly recognized. *The deed showed that, at that time,* there was no claim of right as against the dedication." And, further : " It is claimed, however, that the erection and maintenance of the fence enclosing part of the street was to that extent a revocation. The answer to that claim is that it was manifestly not so intended, *because in all the deeds coming down as late as* 1862, *the dedication and the streets are expressly recognized.*"

If Mr. Haskin had deeded to A in 1860, subject to the public right, and A had deeded to B in 1870, subject to the same public right, the case would have been in point, and the acceptance of the dedication in 1877 would have been fatal to B.

I am of opinion, therefore, that Mr. Haskin is the absolute owner of the sixteen feet in question, freed from the easement granted to the adjoining owners by the deed under which he took ; and freed, also,

from the proffered dedication contemplated by the map filed in 1849 and by the phraseology of his deed on that head.

The order should be reversed, with costs, and the proceedings remitted to the commissioners for revisal and correction.

Order affirmed, with ten dollars costs and disbursements.