THE CITY OF COHOES, APPELLANT, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, RESPONDENT.

SAME v. SAME.

*Public highway — dedication of land to the uses of — when qualified and revocable — necessity of an acceptance by the public authorities.*

In 1833 the Cohoes Company, which owned a considerable tract of land in the village of Cohoes, within which was an alleged street, known as Van Rensselaer street, made a map of the village, and subsequently another map, in each of which a street, eighty feet wide, was designated as Van Rensselaer street, and an open canal, about thirty feet wide, was laid down extending along the west side of the said street. In 1847 the company sold a lot, by a deed referring to the map, bounded: "Beginning at the north-west corner of Ontario and Van Rensselaer street." In 1858 and 1861, other lots were conveyed bounded on the street.

In 1853 the Albany Northern Railroad Company filed a railroad map which designates Van Rensselaer street in the same manner as the other maps, and in that year said company constructed its railroad the whole length of Van Rensselaer street, occupying a space about fifty feet in width along the easterly side of the street. About the same year the said company constructed a freight-house in

Van Rensselaer street, extending in width entirely across that part of the alleged Van Rensselaer street not occupied by the tracks.

From 1845 teams and vehicles passed over the line of the alleged street about where the tracks were afterwards laid, and after the tracks were laid they passed over the street west of the tracks · after the freight-house was constructed they passed around that house through a vacant lot and so back to the street; they also drove to and from the freight-house in delivering and receiving freight on the west side of the tracks in said street.

In June, 1874, the common council of Cohoes passed a resolution that Van Rensselaer street be declared a public street and graded, but no action was taken thereunder.

In an action brought by the City of Cohoes to restrain the successor of the Albany Northern Railroad Company, to which the Cohoes Company had, in 1883, conveyed all its right to Van Rensselaer street, from laying its tracks in that street:

*Held*, that as the maps made by the Cohoes company showed along the west side of the street an open canal of thirty feet wide, that company evidently did not intend to dedicate that part of the street as a public highway.

That whether or not the canal was afterwards built was immaterial upon the question as to the effect of the maps, as the public could claim nothing more than the maps gave.

That the Cohoes Company, by its action in the premises, expressed an equivocal and qualified intent to permit the use of the strip of land designated Van Rensselaer street as a public highway, subject to the right of revocation.

That the action of that company in permitting the laying of railroad tracks and the building of the freight-house thereon, showed an intent to revoke such dedication.

That there had been no such public use as to make the strip of land a public highway.

That the owner of land, by laying out a street thereon by its designation on a map, and even by opening and working such street, cannot make it a public highway, unless the public authorities have accepted it.

APPEAL by the plaintiff from a judgment rendered at the Albany Circuit and Special Term of the Supreme Court, which was entered in the office of the clerk of Albany county on the 15th day of April, 1889, in favor of the defendant against the plaintiff, dismissing the complaint, with costs, in each of the above-entitled actions.

The first action was brought to restrain the defendant from laying track in certain portions of an alleged street, known as Van Rensselaer street, in the city of Cohoes.

The second was brought to restrain the construction of a freight-house in said alleged street.

The two actions were tried before the court without a jury, and a decision in each action was rendered for the defendant.

The facts are substantially the same in each action and, as found by the court, are briefly as follows.

In 1833 the Cohoes Company became the owner of a considerable tract of land within which is the alleged street. A map, known as the Olmstead map, purporting to be a map of the village of Cohoes, has been kept in the office of said company since 1857. A similar map is on file in the county clerk's office of Albany county, having on the margin, " July, 1835." The index book of maps in said office indicates that to be the date of making the map. In that map the land known as Van Rensselaer street was designated as such street. In 1847 the Cohoes Company sold a lot bounded : " Beginning at the north-west corner of Ontario and Van Rensselaer streets," etc., and referring to a map, which is the aforesaid map on file. Another map, called the Frost map, made by Frost, the civil engineer of said company, dated 1845, has been in the office of the company since 1857, which map lays down said Van Rensselaer street as one of the streets of said village. Each of said maps lays down an open canal about thirty feet wide, extending most of the way from Ontario to Oneida street on the west side of, and within, the alleged Van Rensselaer street. Said canal was never opened or used.

The strip designated as Van Rensselaer street is eighty feet wide from Mohawk street to the Mohawk river, intersected nearly at right angles by Oneida, Ontario and Pine streets. In 1858 the Cohoes Company conveyed a lot described as bounded by the west line of Van Rensselaer street, and so, also, another lot in 1861.

The Albany Northern Railroad Company, to whose rights defendant has succeeded, filed a railroad map in 1853, which designates Van Rensselaer street in the same manner as the other maps ; and in that year said company constructed its railroad the whole length of Van Rensselaer street. It is about fifty feet wide, as at present occupied, and is along the easterly side of the street, except the so-called Plaisdell side track. About that year said company constructed a freight-house near the corner of Oneida street and partly in Van Rensselaer street, about fifty-two feet long, extending in width entirely across that part of the alleged Van Rensselaer street not occupied by the tracks, the northerly end being about thirty feet south of Oneida street. This was continuously occupied for railroad purposes till 1887.

From 1845 people having occasion to travel that way passed with teams and vehicles over the line of said alleged street about where the tracks afterward were; after the tracks were laid people in like manner passed over the street west of the tracks; after the freight-house was constructed they passed around that house through a vacant lot and so back to the street. They drove to and from the freight-house in delivering and receiving freight on the west side of the tracks in said street.

In June, 1874, the common council of Cohoes passed a resolution that Van Rensselaer street, from Oneida to Mohawk street, be declared a public street and graded. It is not shown that any work has been done by the plaintiffs on the street, between Oneida and Ontario; and the work between Ontario and Pine is but trifling. No real attempt to grade is shown to have been made.

It is found in the first action that in November, 1886, the defendant attempted to lay down an additional track, between the present tracks and the west line of Van Rensselaer street north of Pine. And in December, 1886, the defendant attempted to lay a similar track north of Ontario.

No part of Van Rensselaer street had ever been worked, within the meaning of chapter 311, Laws of 1861, prior to June 4, 1880, or within six years after the resolution aforesaid.

The court further found, in both actions, that the Cohoes Company, by its acts aforesaid, expressed an equivocal and qualified intent to permit the use of the said strip of land as a public high-way, subject to the right of revocation; that the action of the company in permitting defendant (or the Albany Northern Railroad Company) to lay its tracks and build its freight-house, expressed an intent to revoke such dedication; that there had been no such public use as to constitute the strip of land a public highway.

It was also found in the second action that in December, 1887, the defendant began to excavate for the foundations of a new freight-house extending thirty-four feet farther south and thirty feet farther north than the old. In 1883 the Cohoes Company conveyed to defendant all its interest in Van Renesselaer street.

*Edwin Countryman*, for the appellant.

*Edwin Young*, for the respondent.

LEARNED, P. J.:

It is not important to inquire what rights the grantees of lots bounded on the alleged street may have acquired thereto. (*Niagara F. S. B. Co.* v. *Bachman*, 66 N. Y., 267.) Such grantees are not before us. The question is: What are the rights of the City of Cohoes, claiming to act for the public? Many cases are cited by the plaintiff, such as *Bissell* v. *New York Central Railroad Company* (23 N. Y., 62); *Wiggins* v. *McCleary* (49 id., 346); *Cox* v. *James* (45 id., 557), showing that where a grantor has conveyed land, bounding the same upon a street laid out by him on some map, the grantee acquires a right to the use of such street. Such cases, however, only show the individual right of the grantee, not the right of the public. The grantee pays a consideration, and for that he acquires a right over the street laid out on the map. But the public have paid no consideration, and are no parties to the transaction. Hence it is that, as to the public, the acts and declarations of the owner must be unmistakable in their purpose, and decisive in their character. (Washburn on Easements, 182.) For as to the public the owner is not selling, but, as claimed, is making a gift.

Now, in the present case, the maps made by the company showed along the west side of the street an open canal of thirty feet wide. Evidently then, that part of the street was not dedicated as a public highway, for that canal was to be used to supply water to mills, not for purposes of navigation. The public could take only what the owner gave, and as the owner showed that this strip of thirty feet was to be, or might be, used as a canal, the public could not take that part as a highway. The case is similar to the Bachman case above cited. In that case there was a note upon the maps reserving a discretionary power to say how much and what part of the streets should be used for canals. It was held that this negatived the intention of absolute and irrevocable dedication. In the present case the owner did not reserve a right to be exercised in the future, but on the very map itself it showed that thirty feet of the so-called street was reserved for a canal. Whether or not the canal was afterwards built is immaterial on the question of the effect of the maps, for the public could claim nothing more under the maps than the maps gave. The plaintiff urges that the omission to build the canal does not authorize defendant to lay its track on the thirty feet. But that

is a question between the defendant and the Cohoes Company. The plaintiff to succeed must show that the thirty feet strip is land over which the public have the right to travel. And the first step necessary is to show dedication by the Cohoes Company. In the Bachman case no canal had been actually constructed, but the right to construct took away the claim of the public that there had been an absolute dedication.

In 1883 the Cohoes Company conveyed all its rights in Van Rensselaer street to defendant. Let us suppose that before that date the Cohoes Company (or after that date the defendant) had commenced to construct a canal on this strip of thirty feet. On what ground could the plaintiff have objected? If it appealed to the maps for its right, the maps would have shown that the dedication, such as it was, was qualified by the canal shown on the maps. And the plaintiff has never acquired any rights except such as the Cohoes Company had given to the public. No user by the public or formal acceptance by the city, would modify the terms of the dedication. Certainly not, unless the user could be shown to be adverse to the right reserved in the dedication. That is not shown here. (*Burbank* v. *Fay*, 65 N. Y., 65.)

Further, on the question of dedication, it appears by a resolution of the Cohoes Company in April, 1851, that the president and agent were authorized to agree with the Albany Northern Railroad Company in respect to the location of the railroad and the damages; and that in 1853 the tracks of the company were laid as they have ever since been and now are. And from the same time the freight house has entirely blocked the so-called street at one point. These acts, it is just to conclude, were done with the consent of the Cohoes Company. The railroad tracks of fifty feet wide and the reserved thirty feet for a canal take the whole width of the street. And the construction of the tracks and freight-house show that at that time, at least, there was no intention on the part of the Cohoes Company to dedicate this street to public travel. Even then, if we assume that by the maps the Cohoes Company dedicated the so-called Van Rensselaer street as a highway, reserving the thirty feet for a canal, still the dedication must be deemed to have been revoked in 1853, if the revocation was possible.

It is evident, on principle, that the owner of land by laying out

a street thereon upon a map, and even by opening and working such street, cannot make it a public highway. For if it is a public highway, a duty lies on the public authorities to take care of it. And such duty cannot be imposed on them by the mere act of the owner. There must be an acceptance. (*Holdane* v. *Cold Spring*, 21 N. Y., 474.) Such acceptance may be formally made by the public authorities. And in the present case a formal acceptance was made by the plaintiff June 3, 1874. At that time, however, the defendant and its predecessor had been for more than twenty years in possession of the tracks and the freight-house. And the defendant could not by that acceptance be deprived of any rights it had acquired by the consent of the Cohoes Company. The plaintiff did not assume to declare only the thirty feet west of the railroad track a public highway, but declared the whole street such and directed that it be graded. This resolution of the common council, declaring Van Rensselaer street a public highway, might be considered an acknowledgment by the plaintiff, that up to that time the street had not been a public highway. Certainly there had been no acceptance by the public authorities prior to that time.

But the plaintiff relies on user by the public as showing an acceptance. It will be seen on examining the case that prior to 1853 there is very little proved which can be called a public use. A few persons drew manure from private property. After 1853 any user was restricted to such part as was not occupied by the tracks and the freight-house. Persons passed along at the side of the tracks and then back of the freight-house upon private property and then returned to the alleged street. So that a part of such travel was over land where it was not claimed that any street existed. Much, too, of the travel was to the freight-house for the purpose of delivering and receiving freight; and this would not necessarily show use as a public highway. It might show only such access to the freight-house as the defendant would naturally permit for its own good.

Before considering the question of the length of time which user must continue in order to give the public right to a highway, we notice one position taken by plaintiff resting upon language used in *Holdane* v. *Trustees* (23 Barb., 119), that is, that there is a difference between a public right of passage over lands and a highway which the public authorities are bound to keep in order. That

case was afterwards heard in the Court of Appeals (21 N. Y. 474), and nothing is there decided to sustain this view. The doctrine there was, that the land in question was not charged with a perpetual public burden although the public had enjoyed free and indiscriminate passage over it. And while an owner of land by opening a street and selling lots bounded thereon may thereby give to the owner of said lots the right of access thereto over the street for themselves and all persons having business with them, yet the street does not thereby become, in the true sense, public. Nor do we think that there can be a full right of passage for all the public with teams and vehicles over a piece of land which is not a highway, with the care of which the public authorities are charged.

In the case of the bridge across the *Shawangunk Kill* (100 N. Y., 642), the report of a referee had held the town of Crawford liable to rebuild one half of the bridge across the Shawangunk Kill, a boundary between the towns of Crawford and Shawangunk. The road which crossed the stream at the bridge was opened and the bridge built at private expense. The General Term reversed the order entered on the report. The question was whether there had been an acceptance by the town. And the Court of Appeals in affirming the order of the General Term said : " Here the use of the road by the public was only for about four years ; and if mere user by the public without any action of the town authorities laying out or recording or improving or accepting the road can make a highway (a point we do not determine), such user must continue at least twenty years." This case came up under chapter 639 Laws of 1857. It was not a matter for a jury. It was for the court to determine whether the town was liable. The referee and the Special Term had held that the town was liable. It therefore was necessary for the Court of Appeals to decide this point. And, in saying that twenty years was necessary, it gave the reason why four years was not enough. We cannot consider this remark to be *obiter.*

In *People* v. *Loehfelm* (102 N. Y., 1), the court, speaking on this matter, say : " Long public use ; " which is not inconsistent with the case just cited. The same expression, " long public use " is found in *Cook* v. *Harris* (61 N. Y., 454). In *Wiggins* v. *Tallmadge* (11 Barb., 457), there was over twenty years user. But it was said that authorities differed as to the requisite time. So, in *McMannis*

v. *Butler* (51 Barb., 436). In *Wildrick* v. *Hager* (10 N. Y. St. Rep., 768), the road had been opened and worked by the public authorities. The *Hunter Case* (6 Hill, 407), was where a burial ground had been dedicated, and had been used for thirty-six years. The peculiar uses of the land might well justify the holding that much less than thirty-six years would have been an acceptance.

With the recent case in our highest court above cited to control us, it does not seem profitable to examine the decisions of other States or other countries. There is very little use in reporting the decisions of the Court of Appeals, unless they are to be held decisive of the law, at least until that court shall reverse them.

The dedication, under which the plaintiff claims, must have been made in 1835 or 1845. If twenty years' user by the public is needed to show acceptance, the street could not become a highway until 1855 or 1865. By chapter 311, Laws of 1861, a highway not opened and worked within six years shall cease to be a road. In *Ludlow* v. *Oswego* (25 Hun, 260), this is held applicable to dedicated highways. This would require the working and opening of the road by 1861 or 1871. It is stated, and we may take notice of the fact, that the plaintiff was incorporated in 1869. In the case last cited, and in *Horey* v. *Haverstraw* (14 N. Y. St. Rep., 498), it was held that this statute was applicable to "streets," strictly so-called. The contrary was held in *Vanderbeck* v. *Rochester* (46 Hun, 87). Without considering whether or not the statute would apply to a street laid out or dedicated in a city, we must notice that when this street (as claimed) was dedicated, the city did not exist. It is stated by plaintiff's brief that the village was organized in 1847 or 1848, but no evidence of this is given. At any rate, the so-called street was originally a mere country highway. The city, when organized, did not take this street by any proceeding for that purpose. Nor did the city proceed to have the street opened and worked before the six years had elapsed. And certainly the city could not, without some action on its part, be required to assume the care and responsibility of every disused highway within the city limits. In *Beckwith* v. *Whalen* (70 N. Y., 430), it was said that to be worked and opened, the highway must be passable for its entire length. It does not appear that this street was ever worked during the time in question, and it was completely obstructed by the freight-house.

The defendant, as has been already seen, is now the owner of the fee. It has the right, therefore, to use the land as it chooses unless the plaintiff can assert for the public a highway over the part west of the tracks. Of the part occupied by the tracks and by the freight-house, the defendant has had for many years undisputed possession. There is nothing to indicate that its obstruction of the whole street was limited by anything but its own convenience. Travel along the side of the tracks did not interfere with its business, and was to a great extent connected with it. The plaintiff does not put itself in the position of having purchased or taken by proceedings *in invitum* this street, or of having expended labor or money upon it. Nor does it show that it, or any one whom it represents, ever accepted the gift tendered by the Cohoes Company.

We are of opinion that the judgments should be affirmed, with costs.

LANDON and PUTNAM, JJ., concurred.

Judgments affirmed, with costs.