### SCHADE v. CITY OF ALBANY.

*(Circuit Court, Albany County.* February 26, 1891.)

1. STREETS—DEDICATION—EVIDENCE—MAPS.
    The city of Albany conveyed a tract of land within its corporate limits, reserving the right to open through it such streets as it saw fit. Shortly afterwards the city had a map made by its engineer, on which certain streets were shown laid out through this tract. Its grantee acquiesced in the location of these streets for nearly 40 years, and then conveyed lots bounded on one of them. *Held,* that this shows a valid dedication by the city or by the joint act of the city and its grantee.

2. SAME—ACCEPTANCE—MAPS.
    The making and filing of the map by the city is an express acceptance of the dedication if it be deemed to have been made by the grantee of the land in question.

3. SAME—REVOCATION—OBSTRUCTION OF STREET.
    The obstruction of one of such streets by the owner of a lot abutting thereon cannot be considered a revocation of the dedication where the deed to such owner bounded the lot on the street in question, as did also the deeds under which his grantors claimed.

4. STREETS—ABUTTING OWNERS—RIGHTS—EVIDENCE.
    The rights of such owner in the bed of the street are in no way enlarged by the facts that other lots were conveyed which crossed and included the street, and that the city assessed these lots without excepting the street, where he fails to connect himself with the deeds, or to show that he relied on these assessments when he took his title.

This was an action commenced by Charles Schade for the purpose of restraining by injunction the city of Albany from removing certain buildings, sheds, fences, and other structures erected by the plaintiff during the year 1886, and thereafter maintained by him on certain lands described in the complaint, a portion of which the defendant claimed to be a continuation of one of the public streets of the city of Albany known as "Elk Street." The claim made by defendant was contested by plaintiff, who insisted that the land referred to was his private property, and the question litigated was whether or not the *locus in quo* was or was not a public street. It appeared from the evidence introduced on the trial that the defendant was, prior to the year

1761, the owner in fee of a large tract of land within the corporate limits of the city of Albany, consisting of 151 acres, and including the premises described in the complaint.   On the 3d day of May, 1761, a conveyance in fee of the land was made by the city to a corporation known as the "Ministers, etc., of the Reformed Protestant Dutch Church," from whom, by several mesne conveyances, the plaintiff claimed to have derived title.   In the conveyance alluded to, the grantor reserved to itself "always full liberty and license forever thereafter to lay out roads and streets through the above-granted premises, as to it should seem most convenient."   No action of that character appears to have been taken by either grantor or grantees until the year 1808, when the city, in pursuance of the authority over the land which it reserved to itself as above described, caused a map of the city of Albany to be made by its city engineer, and filed in his office, which has remained there ever since, and has been known during all that time as the "Van Allen Map of 1808." On this map the tract of ground conveyed as above stated appears with various streets and cross-streets laid out through it, and the blocks of land thereby formed were subdivided into city lots.   Many of the streets in this territory appear to be extensions and continuations of streets in other parts of the city, already in existence, and actually traveled by the public.   These streets are still in existence, and used for all the purposes of public highways, and in the locality surrounding the *locus in quo* are actually opened on the same lines as defined on the said Van Allen map.   Among those streets is one designated as "Elk Street," having a width of about 50 feet, commencing at a point more than one mile easterly of plaintiff's premises, and extending westerly through the tract of land conveyed to the "Dutch Church," and known as the "Dutch Church Tract," embracing a portion of the land on which plaintiff's buildings were constructed, and continuing several blocks beyond.   During the years 1818 and 1827, similar maps were made and filed under the direction of the city authorities, showing the lines of Elk street as laid out on the Van Allen map.   These maps are still in existence, and were produced on the trial.   It also appeared that the maps above named have been frequently referred to in describing lots bounded on such streets, and such course was pursued in the various mesne conveyances through which plaintiff obtained title.   With the exception of the block of land in which the lands in question are included, and both easterly and westerly thereof, Elk street has been for many years an open public street, with houses and other structures built on the abutting lots, and for the most part graded and paved, and supplied with all the facilities for public travel and use as a city street.   It is true that in certain places, owing to the physical nature of the surrounding country, certain parts of the street, although open, were not available for all kinds of public travel and use, and it is also true that during a period of many years subsequent to the making and filing of the maps referred to the lands in question were under cultivation, and had been used by the adjoining owners for agricultural purposes, although there had been a recognized pathway, although much narrower than 50 feet, along-side of plaintiff's buildings, leading to and forming an entrance to buildings easterly thereof, which had during all that time been kept open, except at intervals; but the balance of the block has been during a long period of time, and is to-day, closed to public travel, by reason of the erection of sheds and fences connected with buildings erected on streets parallel with Elk street and north and south of the same. Several deeds of the lands abutting on the latter streets, in which the grantors purported to convey one continuous lot from the street north to the street south of Elk street, without any reference to Elk street, were offered in evidence; and it was also proven that, in accordance with the interpretation placed upon those conveyances by the grantees, the lots were fenced in and built upon without regard to Elk street, as above described.   The other facts appear in the opinion.

*Steadman, Thompson & Andrews,* for plaintiff.   *D. Cady Herrick* and
*John A. Delehanty,* for defendant.

PUTNAM, J.   The evidence shows that defendant, in 1781, being the owner
of a tract of land embracing the lot now owned by plaintiff, conveyed the
same to the Reformed Protestant Dutch Church, with the following reserva-
tion: "Always excepting and reserving full liberty and license for the mayor,
aldermen, and commonalty of the said city, or the majority part of them, and
their successors hereafter, to lay out roads and streets through the above-
granted lands, as to them shall seem most convenient." On October 25,
1848, said Reformed Protestant Dutch Church conveyed a portion of the same
premises to the Second Reformed Protestant Dutch Church.   Said grant in-
cluded the premises in question.   Said grantee conveyed to William Muddle,
on May 26, 1856, that portion of the same premises embracing plaintiff's lot.
On October 3, 1856, Muddle conveyed the same premises to Louis Druda.
The latter conveyed lots from the premises so conveyed to him to George
Dauber, George Pleuter, Sussannah Steiger, and Henry Kronan; and after-
wards, on the death of said Louis Druda, his wife and devisee conveyed to
the plaintiff, and it is under this deed that plaintiff holds the premises in
question.   Each of the deeds executed by Louis Druda, above mentioned,
bound the premises conveyed on the south by Spruce street; so the deed from
the church to William Muddle; also the deed from William Muddle to Louis
Druda.   After the death of Louis Druda, Mary Druda, widow, conveyed lots
to Anna B. Miller and Sussannah Steiger, from the same tract, bounded on the
south by Elk or Spruce street, and afterwards conveyed to plaintiff.   It was
conceded that the premises in question were allotted to the Second Reformed
Church, and the conveyance of that church of lots Nos. 49, 51, 52, 53, 57, 61,
63, 67, and 68, bounded said lots on the north by Spruce street.   The deed
from Mary Druda, widow and devisee of Louis Druda, to the plaintiff, was
executed on July 1, 1886, and contains the following description of the prem-
ises conveyed: "All that certain lot, piece, or parcel of land situate, lying,
and being in the 10th ward of the city of Albany, being a portion of the
premises conveyed by William Muddle and wife to Louis Druda by warranty
deed dated October 3, 1856, and recorded in Albany county clerk's office May
20, 1857, in Book No. 146 of Deeds, at page 26.   The portion of the premises
hereby intended to be conveyed is bounded and described as follows: Com-
mencing at a point on the south line of Canal street, between Lexington ave-
nue and Robin street, which said point is the north-westerly corner of prem-
ises conveyed by the said Louis Druda and wife to George Reiter by a deed
dated September 2, 1872, and recorded in Albany county clerk's office October
9, 1872, in Book 256 of Deeds, page 399; and runs from thence southerly
along the west line of the said lot conveyed to the said George Reiter to the
north line of Elk, formerly Spruce, street; and runs from thence westerly
along the north line of Elk street to the intersection of Elk and Canal streets,
being a point; and runs from thence north-easterly along the south line of
Canal street to the place of beginning,—being the same premises owned by
the said Louis Druda at the time of his death, and which he devised to the said
Mary Druda, his wife, by his last will and testament, which was duly proved
and recorded, excepting and reserving therefrom a strip about twelve feet in
width from the east line thereof."   After the conveyance by the city, above
mentioned, the evidence indicates that the city made a map of the tract of
land conveyed to said Reformed Protestant Dutch Church, laying out streets
thereon, and bounding the premises afterwards conveyed to plaintiff by Mary
Druda on the north by Fox or Canal street and on the south by Spruce or Elk
street.   West of said premises was Robin street; and east, Snipe street.   I am
unable to say when the first map was made by the city.   It is claimed that it
was made in 1808.   It is an ancient map, made many years ago, and the evi-

dence indicates that it was made about that time. Afterwards two other maps were made,—one claimed to be made in 1818, and the other in 1827. The evidence does not show when these maps were made, but they are old maps, found in the office of the city engineer, and used and referred to in deeds executed by various parties, and I think that the evidence shows that they were made by the city. There is still another map conceded to be made by the city in 1871. In all these maps Spruce or Elk street is laid down substantially the same. Plaintiff insists that upon the old maps made by the city the point of land made by the junction of Elk or Spruce and Fox or Canal streets was placed east of where the same point is placed upon the map of 1871, and that the evidence shows that plaintiff's lot is a portion of lots 67 and 68 as laid down on said old maps, and lying between Fox and Sand streets. There seems, in fact, to be a discrepancy between the old and new maps in the location of this point of land. In the map of 1871 it reaches up to Robin street, while in the old maps it does not come within, perhaps, 100 feet of Robin street. It would therefore seem that the triangular piece of land conveyed to plaintiff and his grantors must in part have been taken from what on the old maps was laid down as a portion of the street. It must be remembered, however, that in making the map it was only important for the city to lay down the streets correctly, and it was not essential to make a correct representation on the map of the lots owned by individuals. I think the evidence clearly shows that plaintiff's lot could not have been a part of lots 67 and 68. The deeds to him and his grantors conclusively establish the fact that his lot was on the north side of Spruce street as laid down on said map. He must be deemed to be concluded by his deed. The plaintiff has erected fences and buildings, some part of which are on Spruce or Elk street as laid down on these maps. The city of Albany is about to remove said fences and buildings as an encroachment upon the street, and the plaintiff brings this action, asking for an injunction to restrain defendant from interfering with his erections. Plaintiff claims to own or possess the land designated on said maps as a street, which adjoins his said lot, and that such land is not in fact a street.

The deed under which plaintiff claims title has been read in evidence. It is dated in 1886, and recognizes Spruce street, and bounds the premises conveyed to the plaintiff on the north line of said street. Hence I conclude that the evidence does not show any title to the plaintiff in the lands designated on said maps as Spruce street, adjoining plaintiff's lot, but, on the contrary, the evidence shows that he has no title to such land. *Insurance Co.* v. *Stevens,* 87 N. Y. 288. Hence, if plaintiff can maintain this action, it must be as the possessor of the real estate in question. I think the evidence in the case shows a valid dedication of Spruce street, and an acceptance thereof. The city, when it conveyed the tract of land embracing the plaintiff's premises, reserved full liberty and license forever to lay out roads and streets through the land granted. Afterwards the evidence indicates that the city made maps of the tract of land so conveyed, laying out streets thereon, which maps are filed in the city office, and which city maps and the division of the tract into streets was and is apparently acquiesced in by the grantees of the city of the tract in question, who recognized the streets as laid out by the city on said maps, and conveyed their lands thereafter with reference to such maps. The deed to plaintiff, executed in 1886, bounds the lot conveyed to him on the south by Spruce street. It is held "that a map of a tract of land, made by a civil engineer, which for many years has been recognized in various ways, both by the owners of the land covered by it and by the municipal authorities, and adopted by unmistakable acts, is equally conclusive, for all purposes of a dedication, as if made by the landholders, or by their direction." See *Flack* v. *Village of Green Island,* 23 Wkly. Dig. 534. This doctrine, laid down by the general term of this district, I think covers this case. Here is

a map of a tract of land made by the city of Albany, in pursuance of a reservation in its deed of said tract, and hence said map was recognized by the city, and acquiesced in by the owners of the land covered by it. The said owners, in executing deeds of lots, bounded said lots on the street as laid down on the said map.

In my judgment it is not important to determine whether the reservation in the deed from the city to the Reformed Protestant Dutch Church of the right to lay out streets was valid or otherwise. The city assumed, after the making of said deed, to lay out or dedicate streets, and the owners of the tract of land embracing plaintiff's lot acquiesced in such dedication. The city assumed to lay out Spruce street as one of its public streets, probably over 60 years before the deed to plaintiff; and its grantees, plaintiff's grantors, thereafter acquiesced in such act of the city, and conveyed their land bounded on said street. Even as late as 1886 plaintiff's grantors conveyed the lot he now holds, bounding it on the south by Spruce street. It is conceded that the premises in question were conveyed to the Second Reformed Dutch Church, the lots being allotted according to the map "C." The deed to said church was made on October 28, 1848. Hence from 1848, the date of said deed, to 1886, a period of 38 years, plaintiff's grantors recognized and acquiesced in the validity of the dedication of Spruce or Elk street. I think, therefore, that the evidence shows a valid dedication by the city, or by the joint act of the city and its grantees. See *Story's Case*, 90 N. Y. 122; *Bridges* v. *Wyckoff*, 67 N. Y. 130; *Railroad Co.* v. *Overton*, 35 Hun, 160; *Trustees* v. *Cowen*, 4 Paige, 510. If the dedication be deemed made by the grantee of the city, the making of the map by the city is sufficient acceptance of the dedication. *In re Public Parks*, (Sup.) 6 N. Y. Supp. 779. It cannot be deemed that the dedication has been revoked on account of the obstruction of the street near plaintiff's premises. His own deed, made in 1886, recognizes and admits the street, and bounds him upon it. See *Bridges* v. *Wyckoff*, 67 N. Y. 132; *Driggs* v. *Phillips*, 103 N. Y. 77, 8 N. E. Rep. 514. So the deeds of his grantors are all bounded on Spruce street, and recognize it as a public street. These deeds are a recognition of the street as one of the public streets of the city; and a wrongful use of the street, or any part of it, by any person, does not show, under the circumstances, any intent to revoke the dedication by any person authorized to so do. A dedication is a gift of a street by the owners of the land to the public. Before such gifts become operative, there must be an acceptance by the donee. The acceptance may be evidenced by long and continued usage by the public, or by some express act. In this case the making and filing of a map by the city was an express acceptance of Spruce street. *In re Public Parks*, (Sup.) 6 N. Y. Supp. 779. There are cases of dedication where, before acceptance by the public, the owner of the land or others take possession of the street dedicated, or some part of it, and acquire rights thereon, and afterwards the public authorities accept such dedication. In such cases it is held that the dedicator or donor, before his gift is accepted, may revoke it, either wholly or partially, and in that case the public authorities, accepting after a partial revocation, take the gift as it is when accepted. Such was the case of *City of Cohoes* v. *Canal Co.*, 7 N. Y. Supp. 885, (recently decided by the general term of this district.) In this case, however, the dedication was made and accepted long before any obstructions are shown to have been made in the street. By such dedication or acceptance Spruce or Elk street became one of the public streets of Albany. Plaintiff has not shown any revocation prior to the acceptance, by any one authorized to revoke, nor any adverse possession of the street, if there could be an adverse possession in such a case. The dedication could not be revoked by plaintiff, or any of his grantors since the Reformed Protestant Dutch Church, because the dedication was accepted by the city, and also because plaintiff and his said grantors took their title subject to the dedication. See *In re Public Parks*, (Sup.) 6 N. Y. Supp. 779;

*Bridges* v. *Wyckoff*, 67 N. Y. 130. For the same reason, if there can be an adverse possession of a public street, there is none shown in this case by plaintiff or his grantors since the church, because they took their title subject to the easement of the street and the dedication thereof. Some deeds have been read conveying lots bounded by Sand street, and running through to Fox street, across Spruce street, without mentioning the latter street. I do think that these deeds are to be deemed necessarily inconsistent with those recognizing Spruce street. The effect of these deeds is merely to convey to the grantees the soil of Spruce street, subject to the public easement. I am unable to perceive how these deeds, or the fact that the city has assessed and taxed the tract of land between Canal and Sherman streets without excepting Elk street, or how the deed to Kirkpatrick and the subsequent deeds proved under the foreclosure of the mortgage given by him, can in any manner estop the defendant in this action. The plaintiff does not connect himself with these deeds. He does not show that he took his title under said conveyances, or been induced to take title on the faith thereof, or on the faith of said assessments. He does not show that he has in any manner relied upon such assessments, or the said conveyances, or done any act on the faith thereof. His only title shown in the case is under the Druda deed of 1886, and under that deed he took a lot on the north side of Elk street, running to a point made by the intersection of Elk and Canal streets. He is concluded by his own deed.

It is claimed that a part of Spruce street adjoining plaintiff's premises, not having been used or traveled as a highway for six years, or never having been opened as a highway, has ceased to be such, under the provisions of the Revised Statutes, as amended by chapter 311 of the Laws of 1861. The answer to this claim is that a large part of the obstruction in Elk street opposite and adjoining plaintiff's premises, which defendant proposes to remove, has been placed there since 1886, and has not existed for six years. Again, the street opposite plaintiff's premises has, in fact, never ceased to be used as such. It appears that there is and has been for many years a house and barns east of plaintiff's premises, and that Elk street opposite plaintiff's lot has been used for teams and foot passengers as a means of access to said house and barns. There is proof that it has been so used for a period of over 30 years. The street has always been called and known during that time as "Elk Street." Hence the evidence does not show that Elk street, opposite plaintiff's premises, has ever ceased to be used as a highway. It is not necessary, to preserve a highway, that it should be worked or used its whole length. A partial obstruction of the street opposite and near plaintiff's premises would not cause that part to cease to be a highway. See *Driggs* v. *Phillips*, 103 N. Y. 77, 8 N. E. Rep. 514. There are other questions raised in this case, which I have not time to discuss, although I have carefully considered all of them. My conclusion is that the plaintiff has failed to show by evidence that he is entitled to the relief claimed in his complaint, and that hence the complaint should be dismissed.